LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
(212) 465-1180
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NESIA ALLEN, *on behalf of herself and all others similarly situated*, | Case No.: 20-cv-0859 |
| Plaintiff, | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| -against- | |
| LODGING SOLUTIONS, LLC, ACCOMMODATION SERVICES, INC., ACCOMMODATIONS PLUS INC., API AIRPORT SERVICES LLC, ANTOINE KAMEL, FRED KAMEL, RAMZI KAMEL, RICH MCLEER, DONNA MCMANUS, SANDRA CROSBY, LOU ORSI, and JOHN DOE ENTITIES 1-100, | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

Plaintiff NESIA ALLEN ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her undersigned attorneys, as and for her Complaint against Defendants LODGING SOLUTIONS, LLC ("LSL"), ACCOMMODATION SERVICES, INC. ("ASI"), ACCOMMODATIONS PLUS INC. ("API"), API AIRPORT SERVICES LLC ("AAS"), ANTOINE KAMEL ("Tony"), FRED KAMEL ("Fred"), RAMZI KAMEL ("Ramzi"), RICH MCLEER ("McLeer"), DONNA MCMANUS ("McManus"), SANDRA CROSBY ("Crosby"), LOU ORSI ("Orsi"), and JOHN DOE ENTITIES 1-100 ("John Does") (LSL, ASI, API, AAS and John Does collectively referred to herein as "Corporate Defendants"; Tony, Fred, Ramzi,

McLeer, McManus, Crosby, and Orsi collectively referred to herein as "Individual Defendants"; Corporate Defendants and Individual Defendants collectively referred to herein as "Defendants"), states on information and belief as follows:

## INTRODUCTION

1. Plaintiff brings this action on behalf of herself and all others similarly situated to recover unpaid regular and overtime wages, statutory penalties, liquidated damages, interest, and reasonable attorney's fees and costs under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 *et seq.*) and the wage orders promulgated thereunder by the U.S. Department of Labor and codified at 29 C.F.R. § 500 *et seq.* ("FLSA"), and Articles 6, 7, and 19 of the New York Labor Law and the wage orders promulgated thereunder by the New York State Department of Labor and codified at 12 N.Y.C.R.R. §§ 135-146 ("NYLL").

2. Defendants manage lodging and ground transportation services for airlines and other industries in the State of New York and worldwide. Plaintiff and others similarly situated worked for Defendants as airline support specialists, handling calls from Defendants' airline customers. Plaintiff and others similarly situated regularly worked in excess of 40 hours per week for Defendant, but were not compensated properly for all of the hours they worked, or for their overtime hours. Furthermore, when Plaintiff complained about her underpaid wages, she was terminated.

## PARTIES, JURISDICTION, AND VENUE

3. At all times relevant herein, Plaintiff was and is a resident of the State of New York, Queens County. Plaintiff's consent to sue is submitted herewith as Exhibit 1.

4. At all times relevant herein, Defendant LSL was and is a domestic limited-liability corporation duly organized under and existing by virtue of the laws of the State of New

York, and having its principal place of business at 265 Broadhollow Road, 3rd Floor, Melville, New York ("Melville Office").

5. At all times relevant herrein, Defendant ASI was and is a domestic business corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at the Melville Office.

6. At all times relevant herein, Defendant API was and is a domestic business corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at the Melville Office.

7. At all times relevant herein, Defendant AAS was and is a domestic limited-liability corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at the Melville Office.

8. At all times relevant herein, the Defendant John Does are other business entities (the number and identities of which are not presently known) of unknown citizenship affiliated with Defendants' enterprise and having their principal places of business at the Melville Office.

9. All of the Corporate Defendants are operated as a single enterprise ("API Enterprise"), doing business variously as API Global Solutions, Accommodations Plus International, and similar names. The Corporate Defendants comprising the API Enterprise are engaged in related activities, share common ownership and/or management, and have a common business purpose. The Corporate Defendants' employees move interchangeably from entity to entity within the API Enterprise as needed, and use offices and equipment bearing the API Enterprise's name and logo.

10. As the API Enterprise, the Corporate Defendants engage in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which

affect interstate commerce in that the Corporate Defendants have locations outside of the State of New York and transact with customers and vendors located outside of New York, and employees of the Corporate Defendants handle goods and materials produced outside of New York (including electronics equipment and other items) that have moved in interstate commerce, and the Corporate Defendants are thus employers subject to the jurisdiction of the FLSA.

11. At all times relevant herein, the Individual Defendants were and are citizens and residents of the State of New York, Nassau County.

12. Defendant Tony is identified as the chief executive officer of API and ASI in their filings with the New York Department of State, and is listed as the Chairman of the API Enterprise on its website[1], submitted herewith as Exhibit 2. Tony was or is also an owner, shareholder, member, officer, director, manager, and/or supervisor of one or more of the other Corporate Defendants.

13. Defendant Fred is identified as the President of the API Enterprise on its website, and is listed as the addressee of the principal executive office for API and ASI in their filings with the New York Department of State. Fred was or is also an owner, shareholder, member, officer, director, manager, and/or supervisor of one or more of the other Corporate Defendants.

14. Defendant Ramzi is identified as the chief commercial officer of the API Enterprise on its website. Ramzi was or is an owner, shareholder, member, officer, director, manager, and/or supervisor of one or more of the Corporate Defendants. Tony, Fred, and Ramzi are all related to each other.

15. Defendant McLeer is identified as the chief executive officer of the API Enterprise on its website. McLeer was or is an owner, shareholder, member, officer, director,

---

[1] https://www.apiglobalsolutions.com/index.php/team/ (last accessed February 10, 2020).

manager, and/or supervisor of one or more of the Corporate Defendants.

16. Defendant McManus is identified as the vice president of human resources and general counsel of the API Enterprise on its website. McManus was or is an owner, shareholder, member, officer, director, manager, and/or supervisor of one or more of the Corporate Defendants.

17. At all times relevant herein, Defendant Crosby was or is an owner, shareholder, member, officer, director, manager, and/or supervisor of one or more of the Corporate Defendants.

18. At all times relevant herein, Defendant Orsi was or is an owner, shareholder, member, officer, director, manager, and/or supervisor of one or more of the Corporate Defendants.

19. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under the FLSA. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because those claims are related to Plaintiff's federal claims and form part of the same case or controversy.

20. This Court has personal jurisdiction over the Corporate Defendants in that they are incorporated in the state of New York and have their principal places of business therein, and/or they maintain substantial contacts with the State of New York and do significant business therein and profit thereby.

21. This Court has personal jurisdiction over the Individual Defendants in that they are citizens and residents of the State of New York.

22. This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b), because one or more Defendants reside in this district and the events giving rise to Plaintiff's

claims occurred herein.

**JURY DEMAND**

23. Plaintiff demands a trial by jury of all issues so triable in this action.

**STATEMENT OF FACTS**

*Wage And Hour Allegations*

24. Defendants manage lodging and ground transportation services for airlines and other industries in the State of New York and elsewhere.

25. Plaintiff worked for Defendants as an airline support specialist from June 2017 until the termination of her employment on or around June 2, 2019, contacting hotels regarding lodging reservations for the crews of Defendants' airline customers (primarily JetBlue). Prior to March 2018, Plaintiff was paid $18 per hour. From March 2018 until February 2019, Plaintiff was paid $18.54 an hour. From February 19 until her termination, Plaintiff was paid $19.28 an hour.

26. Throughout her employment with Defendants, Plaintiff regularly worked 10 or more hours per day and 40 or more hours per week. From the start of her employment until approximately January 2018, Plaintiff typically worked 4 days a week, with her shifts scheduled to run from 3 P.M. until 1 A.M. (10 hours) but running as late as 7 or 8 A.M. 2 to 3 times per week, for a total of 52 to 61 hours per week. After January 2018, Plaintiff did not work overtime as much or as often, but still regularly worked approximately 42 to 46 hours per week.

27. Despite regularly working 10 or more hours per day, Plaintiff and others similarly situated never received spread-of-hours compensation as required under the NYLL.

28. Additionally, Defendants' payroll policies failed to pay Plaintiff and others similarly situated for all of their overtime hours in violation of the FLSA and NYLL.

29. It was Defendants' policy not to pay their employees overtime unless such employees worked in excess of 82 hours over a biweekly period. Thus, an employee who worked 42 hours per week (84 total over a biweekly period) would be paid at the overtime premium rate of one-and-one-half times his or her regular wage for only 2 of the 4 overtime hours she worked, in violation of the FLSA and NYLL.

30. Moreover, as the overtime cutoff was based on the total hours worked over a 2-week period, employees could be (and often were) denied any overtime at all depending on how the hours they worked were distributed. For instance, an employee who worked 55 hours one week and 25 the next (80 total) would not be paid at the overtime premium for the hours they worked past 40 in the first week.

31. As a result of Defendants' payroll policies, Plaintiff and others similarly situated were routinely not properly paid for a significant amount of overtime worked per week. Plaintiff routinely worked 1 to 5 hours or more per week of overtime for Defendants for which she was not properly paid.

32. The wage statements Defendants provided to Plaintiff and others similarly situated indicate on their face hours in excess of 80 per biweekly period for which such employees were not paid at the proper overtime rate. Defendants thereby failed to provide Plaintiff and others similarly situated with proper wage statements in violation of the FLSA and NYLL.

33. Plaintiff complained about her underpaid wages to Defendants on multiple occasions, but Defendants' policies did not change. In or around late May 2019, Defendants informed Plaintiff and others that their job duties would be expanded to cover customers other than JetBlue. Plaintiff responded to this increase in work duties by once again asking that her

unpaid wages be rectified, and stating that she would not accept these additional duties until her complaints were addressed.

34. On or around June 2, 2019, a few days after her most recent complaint, Plaintiff was told by Crosby that she was terminated. Shortly thereafter, Plaintiff received a letter from McManus dated June 3, 2019 ("June 3 Letter"). In the June 3 Letter, McManus stated that the company had accepted her "resignation," and that she was no longer to report to work.

35. Defendants were or should have been aware of their statutory requirements as employers, including specifically but without limitation the requirements under the FLSA and NYLL to pay Plaintiff and others similarly situated at the proper overtime premium rate of one-and-a-half-times their regular rate for all hours worked in excess of 40 per week, to pay spread-of-hours compensation when Plaintiff and others similarly situated worked in excess of 10 hours per day, to make and preserve proper payroll records, and to not retaliate against employees for wage and hour complaints.

36. However, Defendants knowingly failed to pay Plaintiff and others similarly situated all of the spread-of-hours and overtime wages to which they were entitled, failed to make and preserve proper payroll records, and constructively terminated Plaintiff in retaliation for her complaints.

37. As such, the various violations of the FLSA and NYLL alleged herein were committed knowingly, willfully, and intentionally by Defendants.

38. Furthermore, these violations are ongoing, as Defendants continue to engage in the wrongful conduct described herein.

*Defendants are Joint Employers*

39. At all times relevant herein, the Corporate Defendants were and are parents,

subsidiaries, or otherwise affiliated with each other.

40. The Corporate Defendants, as entities comprising the API Enterprise, are a unified operation and joint enterprise in which all of the activities of the Corporate Defendants and other entities are related to each other.

41. The Corporate Defendants are all operated as a single business unit or economic entity. As a matter of economic reality there is no differentiation between the individual Corporate Defendants and the API Enterprise as a whole.

42. The Corporate Defendants share common ownership, management, and control.

43. The Corporate Defendants are all operated out of the same location, namely the Melville Office.

44. The Corporate Defendants share employees, administrative personnel, equipment, assets, liabilities, profits, and expenses.

45. Throughout her employment with Defendants, the entity from which Plaintiff's paychecks were issued was LSL. The June 3 Letter was sent on API Enterprise letterhead, and listed the API Enteprise website and the Melville Office as its contact information. In the letter, McManus stated that "Lodging Solutions, LLC d/b/a Accommodations Plus International (the Company) has accepted your resignation . . ."

46. The Corporate Defendants implemented the same or similar payroll policies complained of herein throughout the API Enterprise.

47. At all times relevant herein, the Corporate Defendants were and are controlled by the Individual Defendants.

48. In their capacities as owners, shareholders, members, officers, directors, managers, and/or supervisors of the Corporate Defendants, the Individual Defendants have at all

times relevant herein exercised operational control over the Corporate Defendants and the terms and conditions of the employment of Plaintiff and all others similarly situated.

49. Specifically, with respect to Plaintiff and other employees, the Individual Defendants had the power and authority to (i) hire and fire employees, (ii) set their work schedules, (iii) determine their rates and methods of pay, (iv) maintain employment records, and (v) otherwise affect the quality, terms, and conditions of their employment.

50. At all times relevant herein, the Individual Defendants exercised functional control over the business and financial operations of the Corporate Defendants, and had authority over all employee-related decisions, including specifically but without limitation payroll, personnel, and wage and hour policies concerning Plaintiff and all others similarly situated.

51. At all times relevant herein, the Individual Defendants had the power to direct, restrict, regulate, govern, and/or administer the activities of the Corporate Defendants.

52. At all relevant times the Individual Defendants and the Corporate Defendants were joint employers of Plaintiff and others similarly situated as a matter of economic reality, and as a result, all of the Defendants are jointly and severally liable for all claims made herein.

*FLSA Collective Action Allegations*

53. Plaintiff brings the first cause of action herein as a collective action pursuant to Section 216(b) of the FLSA on behalf of herself and all other airline support specialists and other non-exempt call center employees employed by Defendants on or after the date that is six years before the filing of the initial Complaint in this case ("FLSA Collective Plaintiffs").

54. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices,

procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them proper overtime wages. The FLSA claims of Plaintiff as stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

55. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 216(b) of the FLSA. The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

*Class Action Allegations*

56. Plaintiff brings the second cause of action herein as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other airline support specialists and other non-exempt call center employees employed by Defendants in the State of New York on or after the date that is six years before the filing of the initial Complaint in this case ("Class Period").

57. All said persons, including Plaintiff, are referred to herein as the "Class." The members of the Class are readily ascertainable. The number and identity of the members of the Class are determinable from Defendants' records. The hours assigned and worked, the positions held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Rule 23.

58. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, as the facts on which the calculation of that number

would be based are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

59. Plaintiff's NYLL claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants (i) failing to pay spread-of-hours wages for work days in which Class members worked greater than 10 hours; (ii) failing to pay proper overtime wages for all hours worked in excess of 40 per week; and (iii) failing to provide proper wage statements that were in compliance with the requirements under the NYLL. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff sustained similar losses, injuries, and damages as other Class members, wth such injuries and damages arising from the same unlawful policies, practices, and procedures.

60. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

61. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions

engender. Because losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources, while treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

62. When wage and hour violations arise, current and former employees are often afraid to assert their rights. Current employees fear direct or indirect retaliation by their employers, while former employees are fearful of damage to their current or future employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

63. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a. Whether Defendants employed Plaintiff and other Class members within the meaning of the NYLL;

  b. What are and were Defendants' policies and procedures regarding the types of work and labor for which Defendants did not pay the Class members properly;

  c. At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the Class members for their work;

  d. Whether Defendants properly notified Plaintiff and other Class members of their hourly rate and overtime rate;

  e. Whether Defendants provided proper wage statements and wage and hour notices to Plaintiff and other Class members per requirements of the NYLL;

  f. Whether Defendants properly paid Plaintiff and other Class members spread-of-hours compensation per the requirements of the NYLL; and

  g. Whether Defendant properly compensated Plaintiff and other Class members for their overtime hours under the NYLL.

## FIRST CAUSE OF ACTION
### (FLSA Collective Action)

64. Plaintiff repeats each and every previous allegation as if fully set forth herein.

65. At all relevant times Plaintiff and the other FLSA Collective Plaintiffs were employees of the Corporate Defendants within the meaning of the FLSA, and were persons covered by and intended to benefit from the provisions of the FLSA.

66. At all relevant times the Corporate Defendants as a joint enterprise were an employer within the meaning of the FLSA.

67. At all relevant times the Corporate Defendants and the Individual Defendants were joint employers of Plaintiff and the other FLSA Collective Plaintiffs.

68. As alleged herein, Plaintiff and the other FLSA Collective Plaintiffs regularly worked in excess of 40 hours per week for Defendants, but were not paid at the proper overtime

premium rate for all such hours, in violation of the FLSA.

69. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the other FLSA Collective Plaintiffs at the proper overtime premium rate for all such hours they worked, when Defendants knew or should have known such was due.

70. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and the other FLSA Collective Plaintiffs suffered damages in the form of unpaid overtime wages. Plaintiff and the other FLSA Collective Plaintiffs seek judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interest, attorney's fees, and costs, as provided for under the FLSA.

## SECOND CAUSE OF ACTION
### (NYLL Class Action)

71. Plaintiff repeats each and every previous allegation as if fully set forth herein.

72. At all relevant times Plaintiff and the other Class members were employees of the Corporate Defendants within the meaning of the NYLL, and were persons covered by and intended to benefit from the provisions of the NYLL.

73. At all relevant times the Corporate Defendants as a joint enterprise were an employer within the meaning of the NYLL.

74. At all relevant times the Corporate Defendants and the Individual Defendants were joint employers of Plaintiff and the other Class members.

75. As alleged herein, Plaintiff and the other Class members regularly worked in excess of 10 hours per day and 40 hours per week, but were not paid all of the wages to which they were entitled under the NYLL, including overtime and spread-of-hours wages.

76. Defendants also failed to provide Plaintiff and the other Class members with

accurate wage notices and wage statements, as required under the NYLL.

77. Defendants knew of and/or showed a willful disregard for the provisions of the NYLL as evidenced by their failure to compensate Plaintiff and the other Class members for all of the hours they worked, including overtime hours, when Defendants knew or should have known such was due, and their failure to provide Plaintiff and the other Class members with accurate wage notices and wage statements.

78. As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiff and the other Class members suffered damages in the form of unpaid regular and overtime wages. Plaintiff and the other Class members seek judgment in an amount to be determined at trial for these damages as well as an award of statutory penalties, liquidated damages, interest, attorney's fees, and costs, as provided for under the NYLL.

### **THIRD CAUSE OF ACTION**
### (**FLSA Retaliation**)

79. Plaintiff repeats each and every previous allegation as if fully set forth herein.

80. At all relevant times Plaintiff was an employee of the Corporate Defendants within the meaning of the FLSA, and was a person covered by and intended to benefit from the provisions of the FLSA.

81. Section 215(a)(3) of the FLSA provides that it is a violation for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . under or related to this Act."

82. As alleged herein, Plaintiff complained to Defendants about their pay policies and demanded her underpaid wages.

83. In response to such complaints, Defendants constructively terminated Plaintiff in violation of Section 215(a)(3).

84. This retaliatory termination was in willful disregard of the provisions of the FLSA.

85. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff suffered damages in the form of lost earnings. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interest, attorney's fees, and costs, as provided for under the FLSA.

### FOURTH CAUSE OF ACTION
### (NYLL Retaliation)

86. Plaintiff repeats each and every previous allegation as if fully set forth herein.

87. At all relevant times Plaintiff was an employee of the Corporate Defendants within the meaning of the NYLL, and was a person covered by and intended to benefit from the provisions of the NYLL.

88. At all relevant times the Corporate Defendants as a joint enterprise were an employer within the meaning of the NYLL.

89. At all relevant times the Corporate Defendants and the Individual Defendants were joint employers of Plaintiff.

90. Section 215(1)(a) of the NYLL provides that it is a violation for any person to "discharge, threaten, penalize, or in any other manner discriminate against any employee" because such employee has made a complaint to his or her employer about conduct that violates the NYLL, or because such person believes that such employee made such a complaint.

91. As alleged herein, Plaintiff complained to Defendants about their pay policies and demanded her underpaid wages.

92. In response to such complaints, Defendants constructively terminated Plaintiff in violation of Section 215(1)(a).

93. This retaliatory termination was in willful disregard of the provisions of the NYLL.

94. As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiff suffered damages in the form of lost earnings. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interest, attorney's fees, and costs, as provided for under the NYLL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court assume jurisdiction herein and thereafter grant the following relief:

a. Designation of Plaintiff as representative of the FLSA Collective Plaintiffs;

b. Designation of this action as a class action pursuant to Rule 23;

c. Designation of Plaintiff as representative of the Class;

d. Compensatory damages in an amount to be determined at trial, including unpaid spread-of-hours and overtime wages, back pay, and front pay;

e. Statutory penalties and liquidated damages pursuant to the FLSA and NYLL;

f. Pre- and post-judgment interest; and

g. Plaintiff's costs and reasonable attorney's fees;

Together with such other and further relief as the Court deems just and proper.

Dated: February 18, 2020
New York, New York          LEE LITIGATION GROUP, PLLC

By:   */s/ C.K. Lee*
C.K. Lee
Anne Seelig
148 West 24th Street, 8th Floor
New York, NY 10011
(212) 465-1180
*Attorneys for Plaintiff*