```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
```
NESIA ALLEN, *on behalf of herself,*
*FLSA Collective Plaintiffs and the Class,*

                                     Plaintiff,                          **ORDER**
                                                                               20-CV-0859 (ARL)

        -against-

LODGING SOLUTIONS, LLC, d/b/a
ACCOMMODATIONS PLUS INTERNATIONAL
INC.,

                                     Defendant.
```
-------------------------------------------------------------------X
```
**LINDSAY, Magistrate Judge:**

      Plaintiff Nesia Allen and Defendant Lodging Solutions, LLC, d/b/a Accommodations Plus International Inc. ask the Court for (1) for preliminary approval of class action settlement and plan of allocation; (2) conditional certification and collective of the settlement class; (3) directing dissemination of notice and related material to the class, and (4) setting date for fairness hearing and related dates in this wage and hour class and collective action. For the reasons set forth below, the motion is denied without prejudice to renewal to address the concerns raised herein.

## BACKGROUND

      On February 18, 2020, Plaintiff brought this action, on behalf of herself and others similarly situated, for violation of the Fair Labor Standard Act ("FLSA") and New York Labor Law ("NYLL") against Lodging Solutions, LLC, d/b/a Accommodations Plus International Inc., Accommodation Services, Inc., API Airport Services LLC, Antoine Kamel, Fred Kamel, Ramzi Kamel, Rich Mcleer, Donna McManus, Sandra Crosby, Lou Orsi, and John Doe Entities 1-100. The parties stipulated to the dismissal of API Airport Services LLC, Antoine Kamel, Fred Kamel,

Ramzi Kamel, Rich Mcleer, Donna McManus, Sandra Crosby, Lou Orsi, and John Doe Entities 1-100 and an Amended Complaint was filed on June 3, 2020.

Plaintiff brought claims for relief as a collective action pursuant to Section 216(b) of the FLSA and under the NYLL as a class action pursuant to Rule 23 on behalf of herself and all other airline support specialists and other non-exempt call center employees employed by Defendant on or after the date that is six years before the filing of the initial Complaint in this case. Am. Comp. ¶¶ 10, 13. Plaintiff was employed by Defendant from June 2017 through June 2019. *Id*. at ¶ 21. According to Plaintiff, "[f]rom the start of her employment until approximately January 2018, Plaintiff typically worked four (4) days a week, with her shifts scheduled to run from 3 P.M. until 1 A.M. (10 hours) but running as late as 7 or 8 A.M. 2 to 3 times per week, for a total of fifty-two (52) to sixty-one (61) hours per week. After January 2018, Plaintiff regularly worked approximately forty-two (42) to forty-six (46) hours per week. Plaintiff regularly worked ten (10) or more hours per day and forty (40) or more hours per week." *Id*. at ¶ 23. Plaintiff alleges that "[t]hroughout Plaintiff's employment, Defendant's had a policy to not pay their employees overtime unless such employees worked in excess of eighty-two (82) hours over a biweekly period. Thus, an employee who worked forty-two (42) hours per week (84 total over a biweekly period) would be paid at the overtime premium rate of one-and-one-half times his or her regular wage for only two (2) of the four (4) overtime hours she worked, in violation of the FLSA and NYLL." *Id*. at 25. In addition, Plaintiff alleges that, "[w]hile employed by Defendant, Plaintiff did not receive a proper wage notice upon hiring, or upon changes in the information in the notice thereafter. Similarly, Class members never received wage and hour notice." *Id*. at ¶ 28.

Defendant answered the Amended Complaint on June 17, 2020, and by letter dated September 14, 2020, the parties advised the Court that they intended to pursue private mediation.

ECF Nos. 42, 46. On April 8, 2021, the parties engaged in a full-day in-person mediation with a mediator experienced in resolving complex employment disputes. Memorandum of Law In Support Of Plaintiff's Unopposed Motion For An Order (1) Conditionally Certifying Settlement Class And Collective Action, (2) Granting Preliminary Approval To Proposed Class Action Settlement And Plan Of Allocation, (3) Directing Dissemination Of Notice And Related Material To The Class, And (4) Setting Date For Fairness Hearing And Related Dates ("Mem.") at 2. During this mediation, the parties reached a settlement in principle and entered into a settlement term sheet. *Id*. The parties continued negotiating the terms of the class settlement, which were ultimately memorialized in the formal Settlement Agreement. Mem. at 2. On July 7, 2021, the parties jointly filed a motion seeking preliminary approval of the settlement agreement and release, conditionally certifying the proposed class and collective for settlement purposes, appointing Lee Litigation Group, PLLC as Class Counsel, appointing Simpluris as Claims Administrator and approving the proposed Notice of Proposed Class Action Settlement. ECF No. 51.

## DISCUSSION

### A. The Proposed Settlement

The proposed settlement is a hybrid class and collective active action resolution. The Settlement Agreement requires Defendant to fund a $250,000 settlement fund (the "Settlement Fund") which will cover Class Members' awards, a service award to the Named Plaintiff, attorneys' fees and costs, and costs of settlement administration. Mem. at 3. The "Class Members" are defined as Named Plaintiff and all non-exempt employees employed by Defendant during the period of October 27, 2017 through May 23, 2020, who do not opt-out of the Litigation. *Id*. at 4. FLSA Collective Members are defined as "Named Plaintiff and all non-exempt employees employed by Defendant during the period of October 27, 2017 through May

23, 2020. FLSA Collective Members who endorse their settlement checks will fully and finally release their FLSA claims as provided for in Section 4.1(B)." Settlement Agreement 1.15. The term "Class Members" is used in the Settlement Agreement to reference both the FLSA Collective Members and the actual Class Members. *Id*. Individual settlement allocations will be computed based on the number of weeks worked by Class Members during the relevant period. Mem. at 5. According to the Settlement Agreement, "[o]nly Class Members who do not timely opt-out under the terms of this Agreement, and who timely return valid and executed tax forms to the Administrator, shall be entitled to receive a check for their Individual Settlement Allocation." Settlement Agreement 3.2. In addition, a Class Member's endorsement of the settlement check constitutes "opt-in" for purposes of the FLSA. Settlement Agreement at 4.1(C). However, in the event a Class Member chooses not to "opt-in" by not signing the settlement check, that class member nevertheless releases any NYLL claims pursuant to the Settlement Agreement, despite receiving no compensation for those claims. *Id*. The proceeds for any uncashed checks will be returned to Defendant. Mem. at 5.

The Settlement Agreement defines Released Entities as "Defendant, Accommodations Services, Inc., API Airport Services LLC, Accommodations Plus Inc. and their respective estates, heirs, executors, administrators, agents, successors, and assigns, as well as their individual and collective subsidiaries, parents, affiliates, partners (general and limited), members, lenders (including any administrative agent or collateral agent for such lenders), employee benefit plan administrators, creditors, insurers, sureties, predecessors, and successors of the foregoing, as well as the officers, managers, owners, directors, employees, agents, representatives, attorneys, trustees, executors, heirs, spouses, transferees, and assigns of any and all of them in their individual and/or representative capacities, and all persons or entities acting

by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them, solely in their capacity as such. The term Released Entities also includes the following individuals as well as their current and future heirs, executors, administrators, agents, successors, and assigns: 1) Antoine Kamel; 2) Fred Kamel; 3) Ramzi Kamel; 4) Rich McLeer; 5) Donna McManus; 6) Sandra Crosby; and 7) Lou Orsi." Settlement Agreement at 1.26. For purposes of the FLSA collective action, the Settlement Agreement contains the following release provisions:

> Defendant and the Released Entities (who are identified in the Settlement Agreement) from any and all wage-related claims under the Fair Labor Standards Act, any other federal wage and hour law, the New York Labor Law, and/or any other applicable state, city, or local wage and hour law, rule or regulation governing the payment of wages including such claims brought or which could have been brought in the Litigation.

Settlement Agreement 4.1(C).

With respect to timing, after preliminary approval of the settlement by the Court, notice would be mailed to all potential collective and class members. Class members i.e. those who have NYLL claims—are automatically included in the class unless they affirmatively opt out within 60 days of the mailing of the class notice. Mem. at 8. The parties then have 30 days to petition the Court to hold a final approval hearing. *Id.* at 8. If the settlement is approved at the hearing, checks would be sent to class members and potential collective members within 120 days from the final approval date. Settlement Agreement 3.5(D). Those employees who cash their settlement checks would at this point (well after the final approval hearing) be deemed to have opted into the FLSA collective and to have released their FLSA claims.

Finally, according to the parties, "Plaintiff's Counsel will apply for reimbursement from the $250,000 Settlement Fund for their litigation costs, and for attorneys' fees not to exceed Sixty-Two Thousand Five Hundred Dollars and Zero Cents ($62,500), approximately 25% of the

5

Settlement Fund." Mem at 5. The parties contend that "[t]he Court need not rule on fees and costs now. Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Plaintiff's Counsel will subsequently file a formal motion for approval of attorneys' fees and reimbursement of expenses, simultaneously with his motion for final approval of the Settlement." Mem. at 6.

### B. Cheeks review required as part of Preliminary Approval Process

Because this action is a hybrid class and collective action it must satisfy not only Rule 23 (e) but also the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).[1] *See Douglas v. Allied Universal Sec. Servs. LLC*, 371 F. Supp. 3d 78, 81 (E.D.N.Y. 2020). In *Cheeks*, the Second Circuit held that "in light of the unique policy considerations underlying the FLSA," this statute falls within that exception, and that "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks*, 796 F.3d at 206. The court will approve such a settlement if it finds it to be fair and reasonable, employing the five non-exhaustive factors enumerated in *Wolinsky v. Scholastic Inc.*:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotations omitted). "In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs." *Fisher v. SD Protection Inc.*, 948 F.3d 593, 600 (2d Cir. 2020). Moreover, "[c]ertain additional provisions such as confidentiality requirements and overbroad releases of liability are at odds with the protective nature of the FLSA, and thus are

---

[1] The parties fail to even mention *Cheeks* in their memorandum.

6

generally not approved by Courts in this Circuit." *Crowell-Converse v. Staten Island Aid for Retarded Children,* 20 CV 637 (ENV) (LB), 2021 U.S. Dist. LEXIS 190198 (E.D.N.Y. Sept. 30 , 2021) (discussing a Court's obligation in a FLSA case to "police unequal bargaining power" as the reason why Courts generally reject both confidentiality provisions and overboard releases) (citing *Lopez v. Nights of Cabiria*, 96 F. Supp. 3d 170, 177, 181 (S.D.N.Y. 2015)); *Lopez v. Poko St. Ann L.P.*, 176 F. Supp. 3d 340, 344 (S.D.N.Y. 2016) ("[A] number of judges in this [Circuit] refuse to approve any FLSA settlement unless the release provisions are 'limited to the claims at issue in this action'"). The "FLSA demands that at both the preliminary and final approval stages, district courts are required to examine the terms of the settlement for its fairness. That is, a *Cheeks* review for fairness is required both when the preliminary notice is distributed and at a final hearing after those who wish to have opted-into the settlement." *Marichal v. Attending Home Care Servs., LLC*, 432 F. Supp. 3d 271, 280 (E.D.N.Y. 2020).

Where the motion for preliminary approval fails to satisfy these standards courts in this district have declined to grant preliminary approval. *See, e.g., Marichal,* 432 F. Supp. 3d at 283 ("the Settlement Agreement [fails] the substantive *Cheeks* review required for preliminary approval"); *Douglas*, 371 F. Supp. 3d at 83 (denying motion to certify class for settlement purposes and preliminary approval of class settlement because of structural and legal deficiencies); *Rosario v. Emz Sols. LLC*, No. 18-CV-3297(FB)(CLP), 2019 U.S. Dist. LEXIS 198668, (E.D.N.Y. Nov. 13, 2019) (denying motion for preliminary approval where no information provided allowing for an evaluation of the possible range of recovery); *Chen v. XpresSpa at Terminal 4 JFK LLC*, No. 15-cv-1347 (CLP), 2018 U.S. Dist. LEXIS 169758, 2018 WL 1633027 (E.D.N.Y. May 30, 2018) (denying motion to certify a settlement class because the agreement did not meet the requirements of *Cheeks*).

The settlement of the class and collective claims proposed here is virtually identical to the settlement initially proposed in *Douglas v. Allied Universal Sec. Servs. LLC*, 371 F. Supp. 3d 78 (E.D.N.Y. 2020) and must be rejected on the very same grounds. Here, the motion for preliminary approval fails to detail the range of possible recoveries, fails to provide the factual basis for the fee award (typically contemporaneous time records) and contains overly broad release language. First, with respect to the range of possible recoveries numerous courts have required the parties to provide a range of recoveries for potential opt-in Plaintiffs. *See, e.g., Marichal,* 432 F. Supp. 3d at 283 ("because the parties only provide information about Marichal's range of recovery, . . . without information about the Opt-In Plaintiffs and how they would benefit or not from the settlement. To indicate the range of recovery, a plaintiff must at least indicate 'each party's estimate of the number of hours worked or the applicable wage'") (quoting *Lopez,* 96 F.Supp.3d at 176); *Villar v. AHRC Home Care Servs.*, No. 18-CV-9174 (OTW), 2020 U.S. Dist. LEXIS 150800, 2020 WL 4904031, at *2-3 (S.D.N.Y. Aug. 20, 2020) ("the Court could not approve this settlement because the parties have failed to provide the Court with sufficient information to conduct a fulsome *Cheeks* review" including a failure to discuss the range of recovery); *Douglas*, 371 F. Supp. 3d at 83 (denying preliminary approval because the court "lack[ed] basic information on the potential range of recovery for any employees" where "[a]ll that has ever been provided is a summary statement of the gross settlement amount and a basic breakdown of attorney's fees, costs, service awards, and employer-side taxes"); *Rosario,* 2019 U.S. Dist. LEXIS 198668 ("The parties have not provided the Court with a breakdown of the amounts that they anticipate will be received by each Class Member, nor have they given the Court a projection as to what the possible range of recovery would be after trial in order to compare the amounts to be received pursuant to the Settlement Agreement. Thus, it is

impossible for the Court to render an opinion on the fairness of the proposed settlement").

Here, the parties offer no analysis of the possible range of recovery for the named Plaintiff or any other potential opt-in Plaintiff. However, the parties represent that "[p]rior to mediation, Plaintiff's Counsel received and analyzed extensive documentation produced by Defendant for settlement purposes only, including a sampling of including time, payroll, and other productivity-related data for Plaintiff and thirteen (13) other employees who worked in Plaintiff's operational unit." Mem. at 2. Thus, this information should be readily available.

Next, with respect to attorneys' fees, while the recovery of reasonable attorney's fees is permissible under both the FLSA and the NYLL, plaintiff must provide adequate support for the requested amount. *See Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (citing *N.Y. State Ass'n for Retarded Child, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983)). In order to preliminarily approve the settlement of a collective action, courts must be able consider the reasonableness of requested fee amounts in the context of the entire FLSA settlement agreement. *See id*. at 606. Plaintiff here has failed to provide the Court any basis upon which the Court can assess the reasonableness of the requested amount – even preliminarily -- arguing that "[t]he Court need not rule on fees and costs now. Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Plaintiff's Counsel will subsequently file a formal motion for approval of attorneys' fees and reimbursement of expenses, simultaneously with his motion for final approval of the Settlement." Mem. at 6. However, with respect to the settlement of the FLSA collective action, the Court is required to consider the reasonableness of the fee prior to preliminary approval. *See Villar,* 2020 U.S. Dist. LEXIS 150800, *11 (rejecting counsel's position that the Court need not address the fee application at this point in the process); *Douglas*, 371 F. Supp. 3d at 85 ("As to attorney's fees, Plaintiff requests an award of $740,000 but

9

provides no information for the basis of this request. While a court can award attorney's fees based on either the lodestar calculation—the hourly rate times the number of hours worked—or a percentage of the settlement award, '[c]ounsel must provide a factual basis for a fee award, typically with contemporaneous time records'") (citation omitted); *Rosario,* 2019 U.S. Dist. LEXIS 198668 ("counsel has not yet provided any record of hours spent on this matter, nor have they provided any information at the rates at which they bill their clients. At this time, the Court is not in possession of sufficient information to opine on the reasonableness of the requested fee"). Accordingly, Plaintiff is directed to provide support for the amount of attorneys' fees requested.

Finally, for purposes of the settlement of an FLSA collective action, "the FLSA is a uniquely protective statute," *Cheeks*, 796 F.3d at 207, and courts will not approve settlement agreements that contain overly broad release provisions that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." *Id*. at 206 (internal quotation marks omitted) (quoting *Lopez*, 96 F. Supp. 3d at 181); *see also Lazaro-Garcia v. Sengupta Food Servs.,* No. 15-CV-4259, 2015 U.S. Dist. LEXIS 167991, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) ("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action."); *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824, 2015 U.S. Dist. LEXIS 146272, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (rejecting a settlement agreement where "the parties' release language . . . include[d] 'actions and/or claims against the [d]efendants, known or unknown, which [the plaintiff] may have as of the date of this [a]greement including but not limited to any alleged violation of any federal, state or local law, regulation, rule or ordinance which relates in any way to [the] [d]efendants'

10

payment of wages to [the] [p]laintiff during [the] [p]laintiff's employment with [the] [d]efendants'"); *Flood v. Carlson Rests. Inc.*, No. 14-CV-2740, 2015 U.S. Dist. LEXIS 88068, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015) (rejecting a settlement agreement that, in effect, "waive[d] any possible claims against [the] [d]efendants—including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues").

In this action, the language of the claims released is narrowly tailored, however the definition of Released Entities is extremely broad. "'To pass muster under *Cheeks*,' the release 'must be limited to include only . . . the corporate defendants' predecessors and successors, and any other person or entity that plaintiffs claim, or may claim, to have been their employer for purposes of their work at'." *Miglis v. Bed Bath & Beyond, Inc.*, No. 1:16-CV-08160 (PAE), 2019 U.S. Dist. LEXIS 52109 (S.D.N.Y. Mar. 26, 2019) (citing *Garcia v. Good for Life by 81, Inc.*, 2018 U.S. Dist. LEXIS 117437, 2018 WL 3559171, at *4 (S.D.N.Y. July 12, 2018)(providing an example of acceptable language)); *see also Pinguil v. We Are All Frank, Inc.*, 17-CV-2237 (BCM), 2018 U.S. Dist. LEXIS 88339, 2018 WL 2538218 (S.D.N.Y. May 21, 2018) ("the language of the release given by plaintiffs to defendants is both overbroad and vague, in that it extends the benefits of the release to a long list of affiliated persons and entities, regardless of whether those persons and entities were acting in their capacity as such"). The parties here define Released Entities as "Defendant, Accommodations Services, Inc., API Airport Services LLC, Accommodations Plus Inc. and their respective estates, heirs, executors, administrators, agents, successors, and assigns, as well as their individual and collective subsidiaries, parents, affiliates, partners (general and limited), members, lenders (including any administrative agent or collateral agent for such lenders), employee benefit plan administrators, creditors, insurers, sureties, predecessors, and successors of the foregoing, as well as the officers,

11

managers, owners, directors, employees, agents, representatives, attorneys, trustees, executors, heirs, spouses, transferees, and assigns of any and all of them in their individual and/or representative capacities, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them, solely in their capacity as such. The term Released Entities also includes the following individuals as well as their current and future heirs, executors, administrators, agents, successors, and assigns: 1) Antoine Kamel; 2) Fred Kamel; 3) Ramzi Kamel; 4) Rich McLeer; 5) Donna McManus; 6) Sandra Crosby; and 7) Lou Orsi." Settlement Agreement at 1.26. This definition is too broad and must be revised.

C. **Structure of Settlement Fails to Satisfy FLSA**

In addition to the failure of the parties to provide the information required for this Court to properly evaluate the fairness of the settlement under *Cheeks*, there are also several structural problems with the settlement as proposed.

First, according to the Settlement Agreement, the FLSA collective members endorsement of the settlement check constitutes "opt-in" for purposes of the FLSA. Settlement Agreement at 4.1(C). The FLSA requires that any person choosing to be part of the collective must consent in writing and file his consent on the docket. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is action."). The procedure proposed by the parties fails to satisfy this requirement. There is no mention in the Settlement Agreement or Notice to the Class indicating that any consents will be filed with the Court and therefore this procedure cannot be approved by the Court. *See, e.g.*, *Anderson v. Team Prior, Inc.*, No. 2:19-cv-00452-NT, 2021 U.S. Dist. LEXIS 162626, at * 25, 2021 WL 3852720 (D. Me. Aug. 26,

12

2021)(denying preliminary approval where, *inter alia*, no provision made for filing consents with the court); *Jones v. H&J Rest. 's, LLC*, No. 5:19-CV-105-TBR, 2020 U.S. Dist. LEXIS 219071, 2020 WL 6877577, at *6 (W.D. Ky. Nov. 23, 2020) ("merely endorsing a check after a settlement agreement has been reached will not constitute opting in" consent must be filed with the court); *Villar*, 2020 U.S. Dist. LEXIS 150800 (rejecting motion for preliminary approval of hybrid settlement where, as here, "the Settlement Agreements provides that check cashing serves as an employee's consent to become part of a collective, which is insufficient written consent. . . . [and] the Settlement Agreement has no provision for requiring filing employees' consents on the docket, but improperly allows the check endorsement to serve as consent to join"); *O'Bryant v. ABC Phones of N.C., Inc*., No. 2:19-CV-02378, 2020 U.S. Dist. LEXIS 138599, 2020 WL 4493157, at *10 (W.D. Tenn. Aug. 4, 2020) (denying preliminary settlement approval and finding settlement agreement "ineffective" where "there is no procedure by which any consent by the Opt-In Plaintiffs will be filed with the Court").

Second, the procedure proposed by the parties would have the Court conduct a final fairness hearing before member of the collective action have the opportunity to opt-in to the proceeding. This procedure fails to satisfy the FLSA and *Cheeks*. *See, e.g., Douglas*, 371 F. Supp. 3d at 86 (citing cases); *see also Villar*, 2020 U.S. Dist. LEXIS 150800, *8 ("the Settlement Agreement has the Court conduct the *Cheeks* review before members of the collective have opted in. This conflicts with *Cheeks*, which requires the court to evaluate the fairness of a proposed settlement after collective members opt in); *Kirby v. FIC Rests., Inc*., No. 5:19-CV-1306 (FJS/ML), 2020 U.S. Dist. LEXIS 93037, at * 14, 2020 WL 2770387 (N.D.N.Y. May 28, 2020) (rejecting motion for preliminary approval of hybrid settlement which contained provision providing that FLSA collective members opt-in by cashing check, where check were not

distributed until after the final fairness hearing); *Rosario,* 2019 U.S. Dist. LEXIS 198668, at *40 (E.D.N.Y. Nov. 13, 2019) ("the Court declines to endorse a process whereby FLSA claims can be released and the fairness of a settlement determined before the FLSA collective members are given an opportunity to opt into the action and appear at the fairness hearing"); *Chen,* 2018 U.S. Dist. LEXIS 169758, 2018 WL 1633027 ("The procedure set forth in the Agreement—namely that an individual opts in and simultaneously settles his or her FLSA claim by depositing a check—simply makes no sense in the context of *Cheeks*" which "requires that the Court approve a proposed settlement as fair after suit has been filed and before the claims may be dismissed").

Before the Court can consider the fairness of the proposed settlement the parties must restructure the settlement to provide for an opt-in procedure by which Opt-In Plaintiffs may either affirmatively consent to the settlement or otherwise not be bound by it prior to final approval of the settlement and must include a provision requiring any consents to be filed with the Court prior to final approval. In addition to the restructuring of the settlement, the parties shall provide sufficient information to allow the Court to determine the permissible range of recovery, explain why any request for attorney's fees is appropriate under *Cheeks* and its progeny, and narrowly tailor the release language to comport with *Cheeks*.

Dated: Central Islip, New York  
      November 5, 2021

SO ORDERED:

_____/s_____  
ARLENE R. LINDSAY  
United States Magistrate Judge