# Lee Litigation Group, PLLC
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel: 212-465-1180
Fax: 212-465-1181
info@leelitigation.com

Writer's Direct: 212-661-1008
anne@leelitigation.com

March 18, 2022

**Via ECF**
The Honorable Arlene R. Lindsay, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *Allen v. Lodging Solutions LLC*
                Case No.: 20-cv-0859

Dear Judge Lindsay:

      We are counsel to Plaintiff and write jointly with counsel to Defendant, in response to the Court's Order at Dkt. 56 denying preliminary approval without prejudice, and requesting the parties submit a restructured settlement, in compliance with *Cheeks*.

      As background, the parties returned to mediation with Martin Scheinman to renegotiate certain terms of the settlement in view of the concerns raised by the Court. Following discussions with Mr. Scheinman, including on January 20, 2022 and January 28, 2022, the parties reached a revised settlement in principle. As indicated by the Addendum to Settlement Agreement and Release ("Addendum") attached as **Exhibit A**, the parties have agreed to settle this matter on a class-wide basis for $200,000, and have further agreed that class members will *not* be required to return tax forms to the administrator in order to receive their settlement payments. Instead, all class members that do not opt-out of the settlement will be mailed settlement checks upon the Court's final approval of the settlement. Importantly, the revised settlement is not reversionary. The entire gross fund of $200,000 will be spent by Defendant. Class members shall receive compensation for the release of *both* their FLSA claims and NYLL claims. This resolves the Court's concern about class members releasing NYLL claims without receiving compensation.

      Furthermore, to alleviate the Court's concern regarding the check endorsement FLSA opt-in settlement model, the parties propose that a list of those individuals that opted-in by endorsing their initial settlement checks be publicly docketed, and copies of all endorsed checks (front and back) be delivered to Chambers *in camera*. Specifically, after preliminary approval, a notice will be distributed to the class that explicitly advising them that they need not waive their FLSA claims because they can opt out or decline to cash their check. Furthermore, class members will be told in their notice that they will be afforded the opportunity to appear at a fairness hearing to voice any concerns about the settlement. Then, after a fairness hearing, the Court will issue an order authorizing distribution of the settlement checks. The Court must enter a separate order to dismiss the action but only after the initial checks are publicly docketed and

delivered and the time to cash them expires. This ensures that class members "opt in" to the action on the docket and become parties within the meaning of FLSA § 216(b), before the action is terminated and dismissed with prejudice. Accordingly, the parties submit that their revised settlement structure does not offend *Cheeks*. Notwithstanding these fundamental changes to the structure of the settlement, the parties respond below in detail to the issues raised in the Court's Order at Dkt. 56.

1. **Structure of the Hybrid Settlement Satisfies the FLSA**

Contrary to the "structural issues" the Court raised, the parties believe the settlement, as revised, complies with *Cheeks*. Specifically, Plaintiff's counsel has recently encountered and briefed the central issue raised by this Court regarding hybrid settlements in view of two recent E.D.N.Y. cases, *Douglas and Marichal*[1], to the satisfaction of Hon. Cathy Seibel, U.S.D.J. in the action *Carrasco v. Sompo America Insurance Services LLC*, No. 17-cv-7319 (S.D.N.Y., July 17, 2020), (in which Judge Seibel, following supplemental briefing on this issue, granted final approval to the class settlement), *See* 17-cv-7319 at Dkt 115; and Hon. Ona Wang, U.S.M.J. in the action *Villar v. AHRC Home Care Services, Inc., et al.,* No, 18-cv-09174, in which Judge Wang, following supplemental briefing on this issue granted preliminary approval, and later, final approval, to the class and collective hybrid settlement. *see Villar v. AHRC Home Care Services, Inc. et. al.,* No. 18-cv-09174, 2020 WL 653870 (S.D.N.Y. Nov. 6, 2020) (order granting preliminary approval); *see also* Transcript of an October 20, 2020 hearing before Judge Wang, annexed hereto as **Exhibit B**, at pgs. 3-8.

We respectfully provide the following supplemental authority at Section A, similar to what was submitted to Judge Seibel and Judge Wang, in furtherance of our argument for fairness of the settlement but also expanded to include additional cases from both the Southern and Eastern Districts wherein a check endorsement settlement model was approved.

**A. Permissibility of Releasing FLSA Claims by Endorsing a Settlement Check**

When the parties reach a settlement of FLSA claims, the court must review the settlement for fairness prior to dismissing the claims under Rule 41. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015)[2]. Unlike a Rule 23 class action, in an FLSA collective action, the only individuals who may be bound by a settlement agreement are those who expressly consent to be bound. *See Marichal v. Attending Home Care Servs.*, *LLC*, 432 F. Supp. 3d 271, 280 (E.D.N.Y. 2020).

---

[1] *Douglas v. Allied Universal Sec. Servs.*, 371 F. Supp. 3d 78 (E.D.N.Y. 2019); *Marichal v. Attending Home Care Servs.*, *LLC*, 432 F. Supp. 3d 271, 280 (E.D.N.Y. 2020).

[2] The FLSA does not specify any particular procedure for approval of a settlement. Indeed, as the Second Circuit has explained, "[n]owhere in the text of the current or prior versions of [29 U.S.C.] § 216 . . . is there a command that FLSA actions cannot be settled or otherwise dismissed without approval from a court." *See Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 403 (2d Cir. 2019).

Consistent with that principle, courts in this district and others have repeatedly approved and expressly endorsed a process by which potential FLSA collective members endorse a settlement check to indicate their consent to join the action and be bound by the settlement. *See, e.g., Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *2 (S.D.N.Y. Sept. 16, 2011) (McMahon, C.J.) ("Class members who do not opt out and who sign their settlement checks will be deemed also to have provided their written consents to join the FLSA collective and to have released their FLSA claims."); *Mills v. Capital One, N.A.*, No. 14-CV-1937, 2015 WL 5730008, at *2 (S.D.N.Y. Sept 30, 2015*)* (Post *Cheeks* decision approving a "hybrid" FLSA/NYLL settlement wherein FLSA claims were waived by the cashing of a check); *Sarinana v. DS Waters of Am., Inc.*, No. C-13-0905 (EMC), 2014 WL 12770237, at *2 (N.D. Cal. June 9, 2014) ("The Court acknowledges that the FLSA claims require an opt-in. However, to accommodate that requirement, the parties could still issue checks to the putative class—e.g., on the back of the check, a statement could be printed stating that signing and cashing the check shall be construed as an opt-in for purposes of the FLSA.")[3]

Incorporating a consent to join on the back of a settlement check promotes judicial and party efficiency, and streamlines and simplifies communications with Class Members.[4] By virtue of the proposed Notice the parties propose to send following preliminary approval, Class Members would be informed in detail about the process and consequences of consenting to join the litigation for purposes of a settlement of FLSA claims, and of their unilateral opportunity to decline to give such consent, as well as the amount of the individual settlement payment they are entitled to receive should they decide to consent. *See Viceral v. Mistras Grp., Inc.*, No. 15-CV-02198- EMC, 2016 WL 5907869, at *10 (N.D. Cal. Oct. 11, 2016) (approving settlement because "both the Notice Packet and the check accompanying it sufficiently inform Class Members of their option not to opt in by not cashing the check").

Class Members can decline to consent to join in two ways: they can opt out of the settlement at the notice stage, or they can decline to endorse and cash the check in the amount of their individual settlement payment. In either circumstance, the Class Member's rights and claims under the FLSA are fully preserved, and the Class Member will not be bound by either the settlement of FLSA claims or the Court's approval thereof. *See Gundrum v. Cleveland Integrity Servs., Inc.*, No. 17–CV–55–TCK–tlw, 2017 WL 3503328, at *3, n.2 (N.D. Okla. Aug. 16, 2017) (approving settlement where "Class Members . . . will not release any claims unless

---

[3] The process of consenting to join an FLSA action and releasing FLSA claims by signing a settlement check has been approved countless times by district courts in the Second Circuit. The Parties attach for illustrative purposes as **Exhibit C** a list of recent cases in which district courts in the Second Circuit have approved this process. The parties respectfully submit that although not every court addressed the process itself in detail, the courts had the detailed settlement procedures before them and upon due consideration of those facts, concluded that these settlements were fair and the mechanism permissible under the FLSA.

[4] In Plaintiff's Counsel's experience, sending all putative collective members checks is much more beneficial to such individuals than a traditional "claims made" settlement, in which FLSA claimants are required to complete the additional, preliminary task of returning a claim form to receive their settlement payments. The traditional claims-made process usually results in approximately 5%-10% participation in the settlement. By contrast, in a settlement where all putative collective members who do not opt-out are mailed checks, Plaintiff's Counsel has found that approximately 80-90% of individuals whose checks are delivered opt into the action by depositing their checks, and thereby participate in the settlement.

they sign and deposit or cash the check"). As with any settlement of FLSA claims attendant to litigation, only those class members who affirmatively consent to join the settlement—here, by declining to opt out of the Rule 23 aspect of the Settlement *and further by endorsing their settlement checks (which prominently include consent-to-join language)*—will be bound to the settlement of their FLSA claims and will have thereby released those claims with the Court's approval.

This hybrid procedure of opt-out notice and check endorsement in class and collective settlements has been approved by countless district courts, as detailed *infra*, and illustrated by the cases listed in the attached **Exhibit C**. However, because courts routinely approve the procedure, they have not, for the most part, provided a detailed explanation of why the procedure is proper. The handful of courts that have taken issue with the procedure have, of course, gone to great lengths to explain their reasoning because it is out of step with the significant majority of courts that have considered and approved such settlements.

Moreover, the small number of courts that have declined, at the preliminary approval stage, to approve a process by which potential members of an FLSA collective consent to join the action by endorsing check, have often done so under different circumstances and based on inapplicable considerations than those presented here. For example, in *Douglas v. Allied Universal Security Services*, 371 F. Supp. 3d 78 (E.D.N.Y. 2019), the district court's principal concern was that "this framework releases a claimant's FLSA claims without consent and creates the possibility that, should a claimant decline to join the FLSA settlement by failing to cash the check, he or she would neither have the benefit of the settlement nor the ability to bring an a FLSA action." *Id*. at 87. Here, however, no Class Member who fails to cash a settlement check will release his or her FLSA claims, and he or she would retain the right to bring an FLSA action.[5]

Similarly, the concern raised by the *Douglas* court that "[a] putative collective action member cannot object to the FLSA settlement" 381 F. Supp. 3d 239, 241 (E.D.N.Y. 2019), is entirely unfounded and misapprehends the nature of an FLSA settlement. Under Rule 23(e)(5), putative class members generally must be provided with the opportunity to object to a proposed settlement because they will be bound by the settlement if the court approves it. No such requirement applies to an FLSA settlement because only individuals who accept the settlement will be bound. *See generally Cheeks*, 796 F.3d 199. Indeed, *Cheeks* contemplates that a court will conduct a fairness review of an FLSA settlement that has been accepted. If the individuals to be bound by an FLSA settlement are dissatisfied with the settlement, their recourse is not to "object" to the settlement when court approval is sought—it is to decline to enter into the settlement in the first instance. Here, any individual who may be bound by the settlement of FLSA claims has precisely that recourse—by declining to sign their settlement check, he or she can reject the settlement and will not release any claims under the FLSA. But even beyond that,

---

[5] The *Douglas* court also expressed concern that there was no mechanism in the settlement agreement for filing consents with the Court. 371 F. Supp. 3d at 241. As set forth *infra*, the Parties propose a modification in the restructured settlement whereby all endorsed checks will be filed with the Court.

there is another important distinguishing feature in the instant action: **because anyone potentially settling FLSA claims is a Class Member who will have received Notice, in this case, every Class Member *will be given the opportunity to object to the Settlement*.** In other words, and as the proposed Notice makes clear, all Class Members will have the opportunity to voice their objections to the Court about any aspect of this settlement, including but not limited to resolution of the FLSA claims.

As the Court notes, in *Rosario v. EMZ Solutions,* No. 18-cv-3297 (FB) (CLP), 2019 U.S. Dist Lexis 198668 (Nov. 13. 2019), Judge Pollack initially denied preliminary approval of a hybrid FLSA/NYLL settlement. As noted by this Court, Judge Pollack initially declined to endorse a process whereby FLSA claims can be released and the fairness of a settlement determined before the FLSA collective members are given an opportunity to opt into the action and appear at the fairness hearing. *Id*. However, the settlement in *Rosario* was restructured to contemplate the dissemination of a notice advising collective members of their right to opt out the settlement or attend a fairness hearing to voice their concerns. *See Rosario v. EMZ Solutions,* No. 18-cv-3297 (FB) (CLP), 2020 WL 841352, at *10 (E.D.N.Y. Aug. 7, 2020). Furthermore, the restructured settlement provided that settlement checks would be delivered *after final approval* of the settlement. *Id.* Judge Pollack approved this structure and, in so doing, observed that:

> "Although the original mechanism proposed for notifying the potential Collective Members, did not, in this Court's view, comport with the policies of the FLSA in that it failed to provide sufficient information to the employees to allow them to make an informed decision and required the employees to release their claims before they were given an opportunity to express their views on the settlement, the Court finds that the updated language [in the notice] provides the Collective Members more information regarding their options, gives them 30 days to object to the settlement before having to accept the checks, allows them to appear at the fairness hearing, and is more aligned with the goals of pursuing due process and fairness."

*See, Id.*[6]

Other courts that have expressed concerns about binding absent members of an FLSA collective to a settlement have done so in circumstances that are also not present here. For example, in *Marichal*, 432 F. Supp. 3d 271, the parties there proposed an FLSA settlement that would bind individuals who had opted into the action unless they responded to a notice by opting out of the settlement. In other words, collective members were presumed to have released their claims *unless* they chose to opt out of the settlement. *Id.* That procedure bears no resemblance to

---

[6] In her decision approving the restructured settlement in *Rosario*, Judge Pollack also observed that the settlement in *Chen v. ExpresSpa* was deficient because it too did not afford collective members the right opt out or attend a fairness hearing before checks were issued. Instead, they would simply receive a check and their FLSA claims would be released when they cashed it. *See, Id. citing Chen v. ExpresSpa at Terminal 4 JFK LLC,* No. 15 CV 1347, 2019 WL 5792315, at *20-26 (E.D.N.Y. Aug. 20, 2019). As stated, this is not what the Parties propose.

the one proposed here because, in addition to being afforded the opportunity to opt out, only individuals who affirmatively endorse checks will be bound by the FLSA settlement. In fact, the *Marichal* court expressly endorsed a procedure nearly indistinguishable from what the Parties propose here—one by which "notice is sent to . . . other employees who have not previously joined to give them an opportunity to opt into the collective and accede to the settlement." *Id.* at 280.

The Parties are confident that the commonly accepted procedure agreed upon in the Settlement Agreement (with the assistance of their mediator, Martin Scheinman, a highly respected and experienced employment law mediator) complies with the FLSA in all respects[7]. Nothing in the FLSA prohibits an individual from simultaneously opting into an action and accepting a settlement of claims at the same time. Moreover, the fairness of the FLSA settlement as to Class Members does not depend on whether or not one or more Class Members decline to consent to join the settlement by signing their checks—indeed, it is their right to decline to do so if they elect to preserve their FLSA claims. This said, with full prior knowledge of their right to opt out of the settlement it is reasonable to assume that any Class Member who does not wish to participate in the settlement will exercise his or her opt-out rights. Under no circumstances, therefore, is the Court adjudicating the FLSA rights of any individual who has not knowingly and affirmatively consented to join the litigation by signing the Consent on his or her settlement check.

The parties believe that all requirements of section 16(b) of the FLSA [29 U.S.C. § 216(b)] are satisfied by individuals' endorsement of their settlement checks. However, to assuage the Court's concerns, the parties propose a procedure recently approved by Hon. Ona Wang in *Villar*, that, following the check endorsement period, a list of all individuals that endorsed their checks be filed on the docket, and copies of all signed settlement checks be submitted to the Court *in camera*. While the distribution of settlement checks would occur after a Final Approval Order approving the terms and conditions of the settlement is entered following a fairness hearing, any order of dismissal and entry of judgment would take place <u>after</u> their filing. The Parties believe that this modification would resolve any concern the Court may have about a final entry of judgment prior to the filing of consents to join.

### 2. The settlement is fair and should be approved under Cheeks

In its Order dated November 5, 2021, the Court directed the parties to provide additional information to demonstrate that the settlement in this action is fair and reasonable pursuant to *Cheeks*. The parties submit that the additional information below demonstrates that the settlement is fair and reasonable.

The court in *Wolinsky v. Scholastic Inc.,* 900 F.Supp. 2d 332 (S.D.N.Y. 2012) sets forth the following criteria for determining whether a proposed FLSA settlement is fair and reasonable: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective

---

[7] It is worth noting that the approved hybrid class settlement in *Carrasco* was overseen at mediation by Retired Magistrate Judge Frank Maas, who served for seventeen years as a Magistrate Judge in this district, including a two-year term as Chief Magistrate Judge.

claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotations and citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60*, LLC, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal citations omitted). By its Order at Dkt. 56, the Court requested information as to (i) the range of possible recovery and (ii) the factual basis for the fee award, and informed the parties that the settlement contained overly broad release language.

### A. Range of Possible Recovery

Pursuant to the terms of the parties' Settlement Agreement and Release, as modified by the Addendum, Defendants are paying the total sum of $200,000, for a settlement covering a class of approximately 350 individuals. Significantly, if Defendants were successful in defeating Plaintiff's claim for unpaid overtime (based upon failure to pay for meal breaks, as employees were required to work through their meal breaks), the settlement would represent a more than 100% recovery, because nothing would actually be owed if Defendants won. And, because Defendants had extensive wage and hour records that Plaintiff would have had to rebut to establish a claim of uncompensated overtime, Plaintiff certainly had a risk of recovering nothing if settlement did not occur. For the reasons stated below, and as will be more fully explored at final approval, the range of settlement recovery is fair and reasonable.

Prior to mediation, Plaintiff received a sample of time and payroll records for Plaintiff and thirteen (13) other employees. This sample was statistically significant to determine the viability of Plaintiffs' claims on a collective and/or class basis. Using the sample data, Plaintiff had calculated a "best case scenario", assuming Plaintiff and the class were to completely prevail on their claims for overtime of approximately $332,000 based on 150 class members, as well as for penalties under the Wage Theft Prevention Act. Adjusting for the class size of 350, Plaintiff's original calculation of overtime owed would be $775,000, resulting in an approximately 26% recovery on the backwages owed. However, because the documents themselves do not prove employees worked through their meal breaks, our calculations were based solely on certain assumptions. First, we assumed 2 hours of uncompensated overtime hours per week, every single week, for each class member. Secondly, we assumed the sampling provided was not a true random sampling and, as such, added a 3x multiplier to the wage damages. Removing the 3x multiplier, the backwages owed would be reduced to approximately $258,333 (a 78% recovery). By removing the multiplier and assuming only 1 hour of uncompensated overtime per week, the backwages are further reduced to $129,166 (over 100% recovery). Lastly, we assumed all class members worked every week of their employment periods, took no vacations and had no days off. Naturally, Defendants contend that they paid overtime, which would mean that there are no backwages. In any event, the settlement of $200,000 represents a recovery of approximately 26% to 156%.

As to WTPA violations, Defendant contend that wage notices were provided to employees, and Defendant produced a sampling of wage notices in connection with mediation.

7

In light of the production of wage notices to Plaintiff in connection with mediation, Plaintiff's chances of obtaining a favorable judgment on the WTPA wage notice claim appeared problematic. Nevertheless, Defendants, for settlement purposes only, and to further negotiations at mediation, agreed to postulate that a small number of employees, at most 10 people, did not receive a wage notice. This assumption would mean that value of the WTPA wage notice claim (even assuming the full penalty) was $50,000. Of note, however, wage notice liability is contingent upon the underlying overtime claim because, if it is found that prompt and timely payment of all wages occurred, the recovery of civil penalties is precluded even if no wage notice was provided. *See* NYLL § 198(1-b). As to wage statement violations (Plaintiff alleged wage statements failed to properly state the correct number of overtime hours worked each week), the violation is similarly contingent on prevailing on the underlying overtime violation. *See* NYLL § 198(1-d) Thus, the wage statement penalty is likely zero.

As stated, if Defendant succeeded at trial in establishing that Plaintiff and the class were properly paid for all hours worked, Plaintiff and class members would run the risk of obtaining less than the payment being received in the settlement, if anything at all. Therefore, the rage of recovery after trial is $0.00 at the minimum (if Defendant wins) to $775,000 (if Plaintiff wins, the 3x multiplier is applied, and all of Plaintiff's assertions about the hours that she and other class members worked are accepted by a fact finder in full).

As stated, the settlement of $200,000 represents a recovery of approximately 26% of the maximum possible recovery of $775,000. Even this percentage is reasonable especially given the difficulties that Plaintiff faces proving her claims here. *See Gervacio v. ARJ Laundry Servs. Inc.*, 17 Civ. 9632 (AJN), 2019 WL 330631 at *1 (S.D.N.Y. Jan. 25, 2019) (Nathan, D.J.) (net settlement of 20% of FLSA plaintiff's maximum recovery is reasonable); *Felix v. Breakroom Burgers & Tacos,* 15 Civ. 3531 (PAE), 2016 WL 3791149 at *2 (S.D.N.Y. Mar. 8, 2016) (Engelmayer, D.J.) (net settlement of 25% of FLSA plaintiff's maximum recovery is reasonable); *Beckert v. Ronirubinov*, 15 Civ. 1951 (PAE), 2015 WL 8773460 at *2 (S.D.N.Y. Dec. 14, 2015) (Engelmayer, D.J.) (net settlement of 25% of FLSA plaintiff's maximum recovery is reasonable). Therefore, it follows that the $200,000 settlement is even more reasonable when measured against more realistic assumptions of maximum recovery stated above.

It should also be noted that all of the foregoing estimates are based upon an assumption that Plaintiff will obtain both class and collective certification. This, however, is not guaranteed.

### B. Factual Basis for Fee Award

The Court stated in its Order that for approval under *Cheeks,* Plaintiff's Counsel must "provide a factual basis for a fee award (typically contemporaneous time records)" citing *Douglas*, 371 F. Supp. 3d at 84-85. Here, the basis for attorneys' fees sought will be a 1/3 percentage of the fund method, with a lodestar cross-check, standard practice for class settlements in this District and Circuit.

While we will of course comply with whatever procedure the Court directs, submitting time records or lodestar, prior to preliminary approval, is a deviation from the norm in class settlement approvals in this District and Circuit. By way of example, of the over 90 class

settlements in which the undersigned has acted as lead counsel that have been granted final approval (a list of which is attached as **Exhibit D**), we have only twice encountered the situation in which the court requested plaintiffs' counsel to submit our lodestar *prior to* granting preliminary approval (See *Villar*, cited above, as well as *Chen, et al. v. XpresSpa at Term 4 JFK, et al.*, 15-cv-1347 (SDNY)). Typically, such information and supporting documentation is submitted following preliminary approval, in connection with plaintiffs' final approval motions, specifically, Plaintiff's motion for approval of attorneys' fees.

However, if the Court so requires the factual basis for the fee award at this stage, we can represent that the attorneys' fees sought of $63,142.75 (See Addendum, **Exhibit A** attached hereto), represents a *negative* multiplier of our current lodestar (our lodestar will increase as it does not include the additional work to be done by counsel once the Court grants preliminary approval, in connection with the Notice mailing and final approval). If the Court requires Plaintiff's counsel's timesheets supporting the lodestar at this early, pre-notice stage, in order to grant preliminary approval, we will provide accordingly.

### C. Release Language

Although the Court noted that the language of the claims released is narrowly tailored, it noted that the definition of "Released Entities" is overbroad. As such, Defendants have narrowed the Released Entities in the Addendum (**Exhibit A**) to include only the corporate defendant, Lodging Solutions, LLC d/b/a Accommodations Plus International Inc., as well as its owners, shareholders, officers, directors, predecessors and successors, and any other person or entity that plaintiffs claim, or may claim, to have been their employer for purposes of their work at Lodging Solutions, LLC d/b/a Accommodations Plus International.

In large part, this is the release the Court has deemed acceptable. *See Dkt. # 56* at pg. 11. The only addition Defendant has made is the inclusion of owners and shareholders. Defendants argue that Section 630 of New York's Business Corporation Law imposes personal liability upon shareholders for unpaid wages. That statute states, in relevant part that shareholders are "jointly and severally personally liable for all debts, wages or salaries due and owing to any of [a corporation's] laborers, servants or employees other than contractors, for services performed by them for such corporation." *See* BCL § 630

Because shareholders are not "employers" within the meaning of the FLSA and NYLL unless the exercise a certain level of control over employees,[8] Defendants contend that the expansion of the release to cover owners and shareholders is reasonable considering the independent avenue provided by Section 630 for a claim against them for unpaid wages.

\*      \*      \*

---

[8] A shareholder may be completely uninvolved in the operation of a business even if the shareholder possesses an ownership stake in it.

For the aforementioned reasons and the reasons stated in Plaintiff's motion for preliminary approval, incorporated herein by reference, the parties respectfully request the Court grant preliminary approval to the revised settlement. For the Court's convenience, a revised proposed Notice to Class, in conformance with the revised settlement terms, has been attached as **Exhibit E**.

We thank Your Honor for considering this matter.

Respectfully submitted,

*/s/ Anne Seelig*
Anne Seelig, Esq.

Encl.