UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NESIA ALLEN, *on behalf of herself,*
*FLSA Collective Plaintiffs and the Class,*

                                                             Plaintiff,                   **ORDER**
                                                                                          20-CV-0859 (ARL)
       -against-

LODGING SOLUTIONS, LLC, d/b/a
ACCOMMODATIONS PLUS INTERNATIONAL
INC.,

                                                             Defendant.
------------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

       Plaintiff Nesia Allen and Defendant Lodging Solutions, LLC, d/b/a Accommodations Plus International Inc. ask the Court for (1) for preliminary approval of class action settlement and plan of allocation; (2) conditional certification and collective of the settlement class; (3) directing dissemination of notice and related material to the class, and (4) setting date for fairness hearing and related dates in this wage and hour class and collective action. On July 7, 2021 the parties indicated that they had reached a proposed settlement as set forth in the Settlement Agreement and Release (the "Agreement"). On November 5, 2021, this Court denied the motion without prejudice to renewal to address the concerns raised in that order (the "November 5, 2021 Order"). On March 18, 2022, the parties submitted a letter attaching an Addendum to the Settlement Agreement and Release ("Addendum" and, together with the Agreement, "Revised Agreement")) once again seeking preliminary approval of the settlement. The proposed notice to the class was further revised and submitted to the Court by letter dated October 11, 2022. ECF No. 59. By order dated October 17, 2022, this Court rejected the proposed revised settlement as set forth in the Addendum, and granted the parties leave to refile the proposed revised settlement

in compliance with the terms described in the parties' March 18, 2022 joint letter. ECF No. 61.
By letter dated November 21, 2022, the parties submitted a revised addendum to the Settlement
Agreement and Release. ECF No. 62. For the reasons set forth below, the motion is granted.

**BACKGROUND**

On February 18, 2020, Plaintiff brought this action, on behalf of herself and others
similarly situated, for violation of the Fair Labor Standard Act ("FLSA") and New York Labor
Law ("NYLL") against Lodging Solutions, LLC, d/b/a Accommodations Plus International Inc.,
Accommodation Services, Inc., API Airport Services LLC, Antoine Kamel, Fred Kamel, Ramzi
Kamel, Rich Mcleer, Donna McManus, Sandra Crosby, Lou Orsi, and John Doe Entities 1-100. The
parties stipulated to the dismissal of API Airport Services LLC, Antoine Kamel, Fred Kamel,
Ramzi Kamel, Rich Mcleer, Donna McManus, Sandra Crosby, Lou Orsi, and John Doe Entities 1-
100 and an Amended Complaint was filed on June 3, 2020. ECF No. 40.

Plaintiff brought claims for relief as a collective action pursuant to Section 216(b) of
the FLSA and under the NYLL as a class action pursuant to Rule 23 on behalf of herself and all
other airline support specialists and other non-exempt call center employees employed by
Defendant on or after the date that is six years before the filing of the initial Complaint in this
case. Am. Comp. ¶¶ 10, 13. Plaintiff was employed by Defendant from June 2017 through June
2019. *Id*. at ¶ 21. According to Plaintiff, "[f]rom the start of her employment until
approximately January 2018, Plaintiff typically worked four (4) days a week, with her shifts
scheduled to run from 3 P.M. until 1 A.M. (10 hours) but running as late as 7 or 8 A.M. 2 to 3
times per week, for a total of fifty-two (52) to sixty-one (61) hours per week. After January
2018, Plaintiff regularly worked approximately forty-two (42) to forty-six (46) hours per week.
Plaintiff regularly worked ten (10) or more hours per day and forty (40) or more hours per
week." *Id*. at ¶ 23. Plaintiff alleges that "[t]hroughout Plaintiff's employment, Defendant's had

a policy to not pay their employees overtime unless such employees worked in excess of eighty-two (82) hours over a biweekly period. Thus, an employee who worked forty-two (42) hours per week (84 total over a biweekly period) would be paid at the overtime premium rate of one-and-one-half times his or her regular wage for only two (2) of the four (4) overtime hours she worked, in violation of the FLSA and NYLL." *Id*. at 25. In addition, Plaintiff alleges that, "[w]hile employed by Defendant, Plaintiff did not receive a proper wage notice upon hiring, or upon changes in the information in the notice thereafter. Similarly, Class members never received wage and hour notice." *Id*. at ¶ 28.

Defendant answered the Amended Complaint on June 17, 2020, and by letter dated September 14, 2020, the parties advised the Court that they intended to pursue private mediation. ECF Nos. 42, 46. On April 8, 2021, the parties engaged in a full-day in-person mediation with a mediator experienced in resolving complex employment disputes. Memorandum of Law In Support Of Plaintiff's Unopposed Motion For An Order (1) Conditionally Certifying Settlement Class And Collective Action, (2) Granting Preliminary Approval To Proposed Class Action Settlement And Plan Of Allocation, (3) Directing Dissemination Of Notice And Related Material To The Class, And (4) Setting Date For Fairness Hearing And Related Dates ("Mem." or "Memorandum") at 2. During this mediation, the parties reached a settlement in principle and entered into a settlement term sheet. *Id*. The parties continued negotiating the terms of the class settlement, which were ultimately memorialized in the formal Settlement Agreement. Mem. at 2. On July 7, 2021, the parties jointly filed a motion seeking preliminary approval of the settlement agreement and release, conditionally certifying the proposed class and collective for settlement purposes, appointing Lee Litigation Group, PLLC as Class Counsel, appointing Simpluris as Claims Administrator and approving the proposed Notice of Proposed Class Action

Settlement. ECF No. 51.

On November 5, 2021, this Court denied the parties' request for preliminary approval of the settlement without prejudice to refiling, noting that before the Court could consider the fairness of the proposed settlement the parties must restructure the settlement to provide for an opt-in procedure by which Opt-In Plaintiffs may either affirmatively consent to the settlement or otherwise not be bound by it prior to final approval of the settlement and must include a provision requiring any consents to be filed with the Court prior to final approval ("November Order"). In addition to the restructuring of the settlement, the parties were required to provide sufficient information to allow the Court to determine the permissible range of recovery, explain why any request for attorney's fees is appropriate under *Cheeks* and its progeny, and narrowly tailor the release language to comport with *Cheeks*. November Order at 8.

On March 18, 2022, following the Court's denial of the parties' motion for preliminary approval, the parties submitted a joint letter to the Court, noting that the parties returned to mediation with Martin Scheinman to renegotiate certain terms of the settlement in view of the concerns raised by the Court ("March Letter"). ECF No. 58. According to the March Letter, following discussions with Mr. Scheinman, including on January 20, 2022 and January 28, 2022, the parties reached a revised settlement in principle. *Id*. The Addendum was attached to the March Letter reflecting the terms of the revised settlement. *Id*.

Pursuant to the terms of the revised settlement, the parties have agreed to settle this matter on a class-wide basis for $200,000, (a reduction from the original settlement amount of $250,000), that class members will not be required to return tax forms to the administrator in order to receive their settlement payments, the entire gross fund of $200,000 will be spent by Defendant, and class members shall receive compensation for the release of both their FLSA

claims and NYLL claims. March Letter at 1. To address the structural concerns raised by the Court concerning the collective action opt-in procedures proposed by the parties in the original settlement, the parties proposed that after preliminary approval, a notice will be distributed to the class that explicitly advises them that they need not waive their FLSA claims because they can opt out or decline to cash their check. Furthermore, class members will be told in their notice that they will be afforded the opportunity to appear at a fairness hearing to voice any concerns about the settlement. Then, after a fairness hearing, the Court will issue an order authorizing distribution of the settlement checks. The Court must enter a separate order to dismiss the action but only after a list of the collective action members that have cashed their checks is publicly docketed and delivered and the time to cash the settlement checks has expired. According to the parties, this ensures that class members "opt in" to the action on the docket and become parties within the meaning of FLSA § 216(b), before the action is terminated and dismissed with prejudice.

Following a conference with the Court on October 11, 2022, the parties submitted a revised Notice to the Class. ECF No. 59, Ex. A. The proposed notice to the class was revised to include a definition of a collective action and to describe the settlement of the collective action claims. *Id.* By order dated October 17, 2022, this Court rejected the proposed revised settlement as set forth in the Addendum, and granted the parties leave to refile the proposed revised settlement in compliance with the terms described in the parties' March Letter. ECF No. 61. By letter dated November 21, 2022, the parties submitted a revised addendum to the Settlement Agreement and Release ("Revised Addendum"). ECF No. 62. The Revised Addendum amended Paragraph 1.14 of the Settlement Agreement to address the structural concerns raised by the Court, specifically, the Revised Addendum provides that the

5

> "Final Approval Order" The Final Approval Order shall mean the order entered by the Court after the Fairness Hearing approving the terms and conditions of this Agreement, distribution of the settlement payments from the Settlement Account, approving the Service Award, approving of Class Counsels' professional fees, expenses and costs, ordering the dismissal with prejudice of all State Law Claims by all Class Members who did not opt-out as well as Named Plaintiff, and dismissing FLSA Claims for all Class Members who endorse, sign, deposit, and/or negotiate their settlement check(s). Following the distribution of settlement checks and the check expiration period, Plaintiff will confidentially submit to the Court copies of all endorsed, deposited and cashed checks, and will publicly file a list of all individuals that endorsed, deposited and cashed their checks. After such filing the Court shall issue an Order dismissing the Litigation with prejudice.

Revised Addendum, attached as Exhibit A to ECF No. 62. In addition, Paragraph 2.10 has been revised to provide that the action shall not be dismissed with prejudice until Plaintiff confidentially submits to the Court copies of all endorsed, deposited and cashed checks, and publicly files a list of all individuals that endorsed, deposited and cashed their checks. *See* Revised Addendum.

## DISCUSSION

### A. The Proposed Settlement

The proposed settlement is a hybrid class and collective active action resolution. According to the Revised Addendum, Defendant is required to fund a $200,000 settlement fund (the "Settlement Fund") which will cover Class Members' awards, a service award to the Named Plaintiff, attorneys' fees and costs, and costs of settlement administration. Revised Addendum at 1. The "Class Members" are defined as Named Plaintiff and all non-exempt employees employed by Defendant during the period of October 27, 2017 through May 23, 2020, who do not opt-out of the Litigation. Agreement at 4. FLSA Collective Members are defined as "Named Plaintiff and all non-exempt employees employed by Defendant during the period of October 27, 2017 through May 23, 2020. FLSA Collective Members who endorse their

settlement checks will fully and finally release their FLSA claims as provided for in Section 4.1(B)." Agreement 1.15. The term "Class Members" is used in the Settlement Agreement to reference both the FLSA Collective Members and the actual Class Members. *Id*. Individual settlement allocations will be computed based on the number of weeks worked by Class Members during the relevant period. Mem. at 5. The Agreement was revised to remove the requirement that Class members provide tax forms before being permitted to participate in the settlement. *Compare* Paragraph 1.4 of the Agreement *with* Paragraph 1.4 in the Revised Addendum. In addition, a Class Member's endorsement of the settlement check constitutes "opt-in" for purposes of the FLSA. Settlement Agreement at 4.1(C). However, in the event a Class Member chooses not to "opt-in" by not signing the settlement check, that class member nevertheless releases any NYLL claims pursuant to the Settlement Agreement, despite receiving no compensation for those claims. *Id*. In response to the Court's concerns, the Agreement has been revised to require the parties to file on ECF a list of all Class Members that have opted into the settlement prior to dismissal of the action. *See* Revised Addendum at ¶ 2.10. Another change from the Agreement is that the proceeds for any uncashed checks will be applied as a *cy pres* charitable donation, rather than returned to Defendant. Revised Addendum at ¶ 3.5(E).

Named Plaintiff, Nesia Allen, will apply for a service award of $2,500, in recognition of the services she rendered on behalf of the Class, and in exchange for her global release of all claims. Mem. at 6. Additionally, Class Counsel will retain a third-party claims administrator, Simpluris ("Claims Administrator"), to mail the Class Notice to Class Members, receive and process objections and opt-out statements, calculate each Class Member's individual settlement award and tax withholdings, pay out the Settlement Fund, provide weekly reports detailing the results of the mailings and participation, and answer Class Member inquiries. The Claims Administrator will be required to agree to a reasonable cap for administration fees and expenses as determined by the

Court, which the Parties estimate to be not more than $15,000. Mem. at 6-7, Revised Addendum at 10.

In response to this Court's November Order, the Revised Agreement defines Released Entities as "Defendant, Accommodations Services, Inc., API Airport Services LLC, Accommodations Plus Inc. Solution LLC d/b/a Accommodations Plus International, its owners, shareholders, officers, directors, predecessors and successors, and any other person or entity that plaintiffs claim, or may claim, to have been their employer for purposes of their work at Lodging Solutions, LLC d/b/a Accommodations Plus International. Revised Addendum at ¶1.26. For purposes of the FLSA collective action, the Settlement Agreement contains the following release provisions:

> Defendant and the Released Entities (who are identified in the Settlement Agreement) from any and all wage-related claims under the Fair Labor Standards Act, any other federal wage and hour law, the New York Labor Law, and/or any other applicable state, city, or local wage and hour law, rule or regulation governing the payment of wages including such claims brought or which could have been brought in the Litigation.

Agreement 4.1(C).

With respect to timing, after preliminary approval of the settlement by the Court, notice in the form attached to the parties October 11, 2022 letter would be mailed to all potential collective and class members within 30 days from the date of this order. Mem. at 7. Class members those who have NYLL claims—are automatically included in the class unless they affirmatively opt out within 60 days of the mailing of the class notice. Mem. at 8. The parties then have 30 days to petition the Court to hold a final approval hearing. *Id.* at 8. If the settlement is approved at the hearing, checks would be sent to class members and potential collective members within 120 days from the final approval date. Settlement Agreement 3.5(D). Those employees who cash their settlement checks would at this point be deemed to have opted into the FLSA collective and to have released their FLSA claims. The Court must enter a

separate order to dismiss the action but only after the initial checks are publicly docketed and delivered and the time to cash them expires. Mar. Letter at 1-2; Revised Addendum 2.10 (B). The Court notes that the procedure is not what is generally followed in FLSA proceedings where under the normal opt-in procedure, the plaintiff is first required to return a claim form in order to opt into the action. However, as counsel has explained, the process outlined here is designed to expedite the distribution of funds to as many Class Members as possible and aims to avoid the problems created when prospective plaintiffs fail to return the claims forms. March Letter at 3. Thus, while the distribution of settlement checks would occur after a Final Approval Order approving the terms and conditions of the settlement is entered, any order of dismissal and entry of judgment would take place after the filing of a list of those Class Members that have opted into the settlement by endorsing their checks.

Finally, according to the parties, Plaintiff's Counsel will apply for reimbursement from the $200,000 Settlement Fund for their litigation costs not to exceed $5,857.25, and for attorneys' fees not to exceed $63,142.75. Revised Addendum at ¶9. In response to the Court's request that they provide support for the requested attorneys' fees, Plaintiff's counsel refused to provide timesheets at this juncture, stating "we can represent that the attorneys' fees sought of $63,142.75 . . . represents a *negative* multiplier of our current lodestar (our lodestar will increase as it does not include the additional work to be done by counsel once the Court grants preliminary approval, in connection with the Notice mailing and final approval)."[1] March Letter at 9.

## I. Preliminary Approval of Settlement

In the Motion for Preliminary Approval, Plaintiff seeks class certification for settlement purposes under Fed. R. Civ. P. 23 of Plaintiff and all non-exempt employees employed Lodging

---

[1] Counsel added "[i]f the Court requires Plaintiff's counsel's timesheets supporting the lodestar at this early, pre-notice stage, in order to grant preliminary approval, we will provide accordingly."

Solutions, LLC, d/b/a Accommodations Plus International Inc. between October 27, 2017 and May 23, 2020.  After reviewing the Motion for Preliminary Approval, the Memorandum, the Declaration of C.K. Lee in Support of Plaintiff's Unopposed Motion For an Order (1) Conditionally Certifying Settlement Class and Collective Action, (2) Granting Preliminary Approval to Proposed Class Action Settlement and Plan of Allocation, (3) Directing Dissemination of Notice And Related Material to the Class, and (4) Setting Date for Fairness Hearing and Related Dates ("Lee Decl.") and all attachments thereto, as well as the Addendum and Revised Addendum, Plaintiff's March Letter and the revised proposed Notice to the Class attached to the October Letter the Court grants preliminary approval of the settlement memorialized in the Settlement Agreement and Release and Revised Addendum between Plaintiff Nesia Allen, individually and on behalf of the Class (as defined below), and Lodging Solution  LLC  d/b/a  Accommodations Plus International, attached as Exhibits A to the Lee Declaration and Exhibit A to the November 21, 2022 Letter, and "so orders" all of its terms.

The approval of a proposed class action settlement is a matter of discretion for the trial court.  *See Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1079 (2d Cir. 1995).  "In exercising this discretion, courts should give proper deference to the private consensual decision of the parties." *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2010 U.S. Dist. LEXIS 139137, 2010 WL 5509089, at *2 (E.D.N.Y. Nov. 29, 2010) (internal quotation marks and citation omitted).  "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . .." *Id*. (internal quotation marks and citation omitted).

Preliminary approval, which is what Plaintiff seeks here, is the first step in the settlement process.  It simply allows notice to issue to the class and for Class Members to object

to or opt-out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the Class Members' input. Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Id*. at *2 (citing Herbert B. Newberg & Alba Conte, Newberg on Class Actions ("Newberg"), § 11.25 (4th ed. 2002)). To grant preliminary approval, the court need only find that there is "probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n-E. R.R.,* 627 F.2d 631, 634 (2d Cir. 1980) (internal quotation marks and citation omitted); Newberg § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members) (quoting Manual for Complex Litigation (3d ed.) § 30.41). The Second Circuit has historically used a nine-factor test articulated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) to determine whether a settlement is fair, reasonable, and adequate. However, fleshing out the nine Grinnell factors at this stage of the settlement approval process is premature and such a review is reserved for the final stage of approval. *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 n.7 (E.D.N.Y. 2006) (recognizing that some courts apply the Grinnell factors at the preliminary approval stage, but concluding that "[l]ittle is gained, however, in applying Grinnell at such an early stage since the proposed settlement has yet to be tested in a fairness hearing, after which the court would still be required to 'make[ ] a final determination as to whether the proposed settlement is 'fair, reasonable and adequate'").

Because this action is a hybrid class and collective action it must satisfy not only Rule 23 (e) but also the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d

199 (2d Cir. 2015).² *See Douglas v. Allied Universal Sec. Servs. LLC*, 371 F. Supp. 3d 78, 81 (E.D.N.Y. 2020). In *Cheeks*, the Second Circuit held that "in light of the unique policy considerations underlying the FLSA," this statute falls within that exception, and that "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks*, 796 F.3d at 206. The court will approve such a settlement if it finds it to be fair and reasonable, employing the five non-exhaustive factors enumerated in *Wolinsky v. Scholastic Inc.*:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotations omitted). "In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs." *Fisher v. SD Protection Inc.*, 948 F.3d 593, 600 (2d Cir. 2020). Moreover, "[c]ertain additional provisions such as confidentiality requirements and overbroad releases of liability are at odds with the protective nature of the FLSA, and thus are generally not approved by Courts in this Circuit." *Crowell-Converse v. Staten Island Aid for Retarded Children,* 20 CV 637 (ENV) (LB), 2021 U.S. Dist. LEXIS 190198 (E.D.N.Y. Sept. 30 , 2021) (discussing a Court's obligation in a FLSA case to "police unequal bargaining power" as the reason why Courts generally reject both confidentiality provisions and overboard releases) (citing *Lopez v. Nights of Cabiria*, 96 F. Supp. 3d 170, 177, 181 (S.D.N.Y. 2015)); *Lopez v. Poko St. Ann L.P.*, 176 F. Supp. 3d 340, 344 (S.D.N.Y. 2016) ("[A] number of judges in this [Circuit] refuse to approve any FLSA settlement unless the release provisions are 'limited to the claims at

---

² The parties failed to even mention *Cheeks* in their Memorandum, however the March Letter provides a discussion of the factors enumerated in *Wolinsky*. *See* March Letter at 7-10.

issue in this action'"). The "FLSA demands that at both the preliminary and final approval stages, district courts are required to examine the terms of the settlement for its fairness. That is, a *Cheeks* review for fairness is required both when the preliminary notice is distributed and at a final hearing after those who wish to have opted-into the settlement." *Marichal v. Attending Home Care Servs., LLC*, 432 F. Supp. 3d 271, 280 (E.D.N.Y. 2020).

Here, Plaintiff claims that the maximum range of recovery for the Class, based upon a class size of 350, is $775,000 assuming each class member was owed two hours of overtime per week worked and that all class members worked every week of their employment, took no vacations and had no days off. March Letter at 7. Using this as the maximum possible recovery, the proposed settlement amounts to 26% of the total possible award. Plaintiff opines that this percentage is reasonable given the difficulties that Plaintiff faces proving her claims here, including documentary evidence presented by Defendants as well as the probability that not all employees worked every week of their employment, took no vacation and had no days off. The Settlement Agreement provides for a total recovery of $200,000, inclusive of attorney fees which, according to Plaintiff, is reasonable in light of the difficulties in proving the case and the potential for no recovery if Defendants were to prevail.

From the $200,000 recovery, counsel is requesting a fee award of a 1/3 contingency fee and costs of no more than $7,500. The releases contained in the proposed Settlement Agreement are limited to the claims as stated and the agreement does not include an overbroad release that might be construed as inconsistent with *Cheeks*. Moreover, there is no confidentiality attached to the settlement nor does the agreement contain a non-disparagement clause.

The Court finds that the Settlement Agreement is the result of extensive, arms'- length negotiations by counsel well-versed in the prosecution of wage and hour class and collective

actions aided by a highly respected mediator experienced in resolving complex employment disputes. Prior to mediation, Plaintiff's counsel received and analyzed extensive documentation produced by Defendant for settlement purposes only, including a sampling of including time, payroll, and other productivity-related data for Plaintiff and thirteen (13) other employees who worked in Plaintiff's operational unit. Moreover, the enhancement award offered to the named plaintiff is appropriate and in line with awards offered in other cases. *See, e.g., Hadel v. Gaucho, LLC,* 193 F. Supp. 3d 243, 244 (S.D.N.Y. 2016) (approving service awards of $15,000 to two named plaintiffs and $10,000 to two others in FLSA action); *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015) (approving settlement service awards of $20,000, $15,000 and $7,500 for named plaintiffs in FLSA and NYLL action).

The Court has reviewed the terms of the Settlement Agreement, including the monetary relief provisions, the plan of allocation, and the release of claims. Based on its review of the Settlement, the Memorandum, and the Court's familiarity with this case, the Court finds that the Settlement is the result of extensive, arm's-length negotiations between the parties with the help of a mediator, after Plaintiff's counsel and Defendant's counsel had fully investigated the claims and become familiar with the strengths and weaknesses of the claims. In addition, the Court finds that "the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employers' overreaching." *Rotthoff v. New York State Cath. Health Plan, Inc.*, No. 19-CV-4027 (AMD)(CLP), 2021 U.S. Dist. LEXIS 68559, 2021 WL 1310220, at *2 (E.D.N.Y. Apr. 8, 2021) (quoting *Le v. SITA Information Networking Computing, USA, Inc.*, 2008 U.S. Dist. LEXIS 20786, 2008 WL 724155 at *1 (E.D.N.Y. Mar. 13, 2008)); *see also Cheeks*, 796 F.3d at 200. Based on all of these factors, the Court finds that the Settlement is within the range of possible final settlement approval, such that notice to the

class is appropriate. *See In re Traffic Exec. Ass'n,* 627 F.2d at 634*; Willix*, 2010 WL 5509089, at *2-3.

II. **Conditional Certification of the Proposed Rule 23 Settlement Class**

The Court finds that the Settlement satisfies all the requirements for conditional certification under Rule 23(a) and 23(b)(3). Specifically, the class is sufficiently numerous that joinder is impracticable. The members of the class share common issues of fact and law, including whether Defendant similarly failed to pay her and Class Members the proper overtime wages, and also failed to provide them with wage statements and wage notices in conformity with the NYLL. Plaintiff has claims that are typical of those of the class because they arise out of the same company-wide policies and practices. Plaintiff is an adequate representatives of the Class since her interests are co-extensive with the interests of the Class Members and are not in conflict with them. Plaintiff has also retained experienced counsel to represent the class. The questions of law and fact common to the Class predominate over individualized issues, and class treatment is a superior way to fairly and efficiently adjudicate this controversy.

The Court provisionally certifies the following class under Fed. R. Civ. P. 23(e), for settlement purposes only ("Settlement Class"):

> Named Plaintiff and all non-exempt employees employed by Defendant during the period of October 27, 2017 through May 23, 2020.

III. **Appointment of Plaintiff's Counsel as Class Counsel**

For purposes of the Settlement, this Court approves Lee Litigation Group PLLC ("Lee"), as Class Counsel because they meet all of the requirements of Federal Rule of Civil Procedure 23(g). *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (explaining

that Rule 23(g) requires the court to consider "the work counsel has done in identifying or investigating potential claims in the action, . . . counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, . . . counsel's knowledge of the applicable law, and . . . the resources counsel will commit to representing the class") (internal quotation marks omitted).

Class Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiff's and Class Members' claims. Lee has substantial experience prosecuting and settling wage and hour class and collective actions, is well-versed in wage and hour law and class action law and is well-qualified to represent the interests of the class. *See, e.g., Maisanache v. Paola Painting & Renovations LLC,* No. No. 16-CV-7697, 2018 U.S. Dist. LEXIS 240518, 2018 WL 11191501 (SS.D.N.Y. Jan. 31, 2018) (finding Lee adequate to represent the class); *Riedel v. Acqua Ancien Bath N.Y. LLC,* No. 14-CV-7238, 2016 U.S. Dist. LEXIS 68747, 2016 WL 3144375, at *7 (S.D.N.Y. May 19, 2016) (approving Lee as class counsel); *Viafara v. MCIZ Corp.*, No. 12 Civ. 7452, 2014 U.S. Dist. LEXIS 60695, 2014 WL 1777438, at *3 (S.D.N.Y. May 1, 2014) (finding that Lee Litigation Group "has acted as lead counsel in many wage and hour class and collective actions" and that the firm would adequately represent the interests of the class).

In order to preliminarily approve the settlement of a collective action, courts must be able consider the reasonableness of requested fee amounts in the context of the entire FLSA settlement agreement. *See Fisher v. SD Prot. Inc.*, 948 F.3d 593, 606 (2d Cir. 2020). In the November Order, the parties were directed to provide support for the fees as requested. November Order at 10. Rather than provide time sheets as is typical in the settlement of collective actions, the parties aver that "we can represent that the attorneys' fees sought of

16

$63,142.75 represents a negative multiplier of our current lodestar (our lodestar will increase as it does not include the additional work to be done by counsel once the Court grants preliminary approval, in connection with the Notice mailing and final approval)." March Letter at 9. In light of this representation the Court will preliminarily approve the fees requested by the parties.

In addition, for purposes of the Settlement, the Court approves Simpluris as the Settlement Claims Administrator. *See Donnelly v. Peter Luger of Long Island*, No. 2:13-cv-1377 (LDW) (ETB), 2014 U.S. Dist. LEXIS 203725 (E.D.N.Y. Nov. 13, 2014).

**IV. Notice**

The proposed Revised Notice, attached as Exhibit A to the October 11 Letter, fully and accurately informs the Class Members of all material elements of the action and the proposed Settlement. Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), a notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. Rule Civ. Pro. 21(c)(2)(B). The proposed Notice satisfies each of these requirements and adequately puts class members on notice of the proposed settlement. *See In re Michael Milken & Assocs. Sec. Litig.,* 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"); *see also Willix,* 2010 U.S. Dist. LEXIS 139137*,* 2010 WL 5509089, at *3-4. The proposed Notice is appropriate because it describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. *Id*.

## V. Class Action Settlement Procedure

The parties propose to disseminate the Notice to the class via first-class mail to the last known address of each class member, in accordance with Section 2.4 of the Settlement. The Court finds that the method of disseminating the Notice, as provided in the Settlement, is the best notice practicable under the circumstances and fully meets the requirements of federal law.

Based on the foregoing, the proposed Notice is hereby approved by the Court. Within fourteen (14) days of the filing of this Order, in accordance with Section 2.4 of the Settlement, Defendant will provide the information described in Section 1.7 of the Settlement to the Settlement Claims Administrator. Within thirty (30) days of this Order, the Settlement Claims Administrator will send the Notice to all Class Members via First Class United States Mail. Each Class Member shall have thirty (60) days from the initial mailing of the Notice to object to the Settlement or opt out of the Settlement.

The Court will conduct a fairness hearing on May 11, 2023, at 12:30 p.m. to address: (a) whether the proposed Settlement should be finally approved as fair, reasonable, and adequate; and (b) Class Counsel's application for attorneys' fees and costs.

Dated: Central Islip, New York  
       December 14, 2022

SO ORDERED:

_____/s_____  
ARLENE R. LINDSAY  
United States Magistrate Judge